[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 9, 2006
THOMAS K. KAHN
CLERK

_____

No. 03-16552

_____

D. C. Docket No. 02-80051-CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HERMAN A. TUREAUD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(February 9, 2006)**

Before BARKETT and WILSON, Circuit Judges, and CONWAY[*], District Judge.

PER CURIAM:

_____

[*]Honorable Anne C. Conway, United States District Judge for the Middle District of Florida, sitting by designation.

Herman A. Tureaud appeals his convictions on four counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and one count of making a false statement to law enforcement officials, in violation of 18 U.S.C. § 1001(a)(2). He also appeals his total term of imprisonment of 78 months to be followed by three years of supervised release.[1]

Tureaud was a West Palm Beach police officer who supplemented his income by building homes and coordinating the building of homes on property he owned. His convictions resulted from selling real estate lots to Jerry Hampton, a known drug dealer, and participating with Hampton and his wife in the construction of homes on these lots.

He argues on appeal that: (1) there was insufficient evidence to support his convictions; (2) the district court erred by admitting various newspaper articles and the testimony of other police officers in evidence to show that Jerry Hampton was known to be engaged in unlawful activity; (3) the district court erroneously charged the jury on deliberate ignorance because there was no evidence to support that charge; and (4) the district court erred in applying enhancements to his sentence in light of Blakely v. Washington, 542 U.S. 296 (2004), and United States

---

[1] Tureaud was sentenced to concurrent terms of 78 months of imprisonment on each of the four money laundering counts and a concurrent term of 60 months of imprisonment for the count of making a false statement to law enforcement officials.

<u>v. Booker</u>, 543 U.S. 220 (2005).  Finding no reversible error, we affirm.

First, we have examined the record and find the evidence sufficient to support the jury's findings that Tureaud knew that the money Hampton used to buy and improve the properties from Tureaud was from illicit sources and that the purpose of the transactions between Hampton and Tureaud was to disguise the illicit source of the funds.  Evidence was presented that Tureaud knew that Hampton had been engaged in illicit narcotics trafficking.  There was additional evidence that Tureaud received cash in several payments totaling approximately $90,000 during meetings that could be characterized as secretive and intended to hide the nature of the transactions.  Finally, the testimony of Jerry Hampton as well as Tureaud's statements in recorded telephone calls and in conversations with fellow officers provided ample support for the inference that Tureaud knew about Hampton's illicit activities and that Hampton was laundering the proceeds from those activities by investing in Tureaud's properties.

We likewise find sufficient evidence to support Tureaud's conviction for making false material statements during his March 20, 2002 interview with a law enforcement agent.  To establish a conviction for making a false statement to law enforcement officials, the government must prove five elements: (1) a statement, (2) falsity, (3) materiality, (4) specific intent, and (5) agency jurisdiction.  <u>United</u>

States v. Lawson, 809 F.2d 1514, 1517 (11th Cir. 1987); United States v. Lange, 528 F.2d 1280, 1287 (5th Cir. 1976) (citations omitted).

The only question raised by Tureaud on appeal is whether the third element – materiality – was sufficiently proved by the government.  At the March 20 interview Tureaud was asked several questions about the number and substance of the "contacts" he had with the Hamptons and what their plans were for several properties.  Tureaud claims that the answers he gave were not material because the government agent "already completed the investigation and simply was asking Officer Tureaud questions that she already knew the answers to."  He further claims that the answers could not have been material and could not have affected the investigation because the agent had already testified before a grand jury concerning her investigation before she met with Tureaud.

The government responds that Tureaud's statements "had the potential to impede or influence the investigation," and we agree.  "[A] material fact is one that has a natural tendency to influence or be capable of influencing the government agency or department in question. . . .  The test of materiality is met so long as the false statements or documents were capable of influencing the government function even if the government was not actually influenced."  Lawson, 809 F.2d at 1520 (citations omitted).  Thus, whether the agent was actually influenced by

4

Tureaud's statements is immaterial. Tureaud's statements were "capable" of influencing the enforcement agent because some of the statements contained information concerning properties that were still under investigation and had the potential to steer the agent away from further investigation regarding those properties.

Finally, under the facts of this case, the district court did not err in instructing the jury on deliberate ignorance as the evidence presented supported a theory of either deliberate ignorance or actual knowledge.[2] Accordingly, having reviewed this record, there is no basis to reverse Tureaud's convictions.

With reference to his sentence, Tureaud argues that he is entitled to re-sentencing based on both constitutional and statutory errors. Tureaud claims that the district court committed three constitutional errors. First, he claims the district court improperly determined the specific value of the laundered funds. The district court set the base offense level for laundering of monetary instruments at 8 pursuant to U.S.S.G. § 2S1.1(a)(2). Finding that Tureaud's conviction involved funds of $120,000, the district court added 8 to the base offense level pursuant to

---

[2] We also find no reversible error in the admission of evidence of Hampton's reputation for narcotics trafficking and the newspaper article about Hampton's illicit activity. Even if the district court erred, any error was harmless in light of the fact that other evidence was presented that indicated that Tureaud knew of Hampton's drug dealing history.

U.S.S.G. § 2B1.1(b)(1)(E).[3]  Second, Tureaud claims that the district court improperly increased his sentence by 6 levels pursuant to U.S.S.G. § 2S1.1(b)(1), which allows an increase if the "defendant knew or believed that any of the laundered funds were the proceeds of, or were intended to promote (i) an offense involving . . . a controlled substance or a listed chemical."  Third, Tureaud claims the district court improperly increased his base level offense by 2 levels for obstructing or impeding the administration of justice because the jury did not prove this fact.

Tureaud cites Booker and refers to Blakely for the first time on appeal.  He concedes that he did not object to the enhancements on constitutional grounds in the district court.  Thus, our review is only for plain error.  United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005); United States v. Shelton, 400 F.3d 1325, 1328-29 (11th Cir. 2005).  "An appellate court may not correct an error the defendant failed to raise in the district court unless there is: '(1) error, (2) that is plain, and (3) that affects substantial rights.'"  Shelton, 400 F.3d at 1328-29 (citations omitted).  "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  Id. at

---

[3] Section 2B1.1(b)(1)(E) applies to more than $70,000 and up to $120,000.

1329 (internal quotation marks and citation omitted).

We find no reversible error as to Tureaud's first claim that the district court improperly enhanced his sentence based on an amount of laundered money not determined by a jury. Tureaud conceded at sentencing that $90,000 had been laundered. The guidelines do not differentiate between $90,000 and $120,000. Thus, even if there had been any error in computing this sum it would not have "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." Based on this record, we similarly find that the district court did not commit plain error by enhancing Tureaud's sentence for knowingly laundering drug proceeds and obstructing justice.

Finally, Tureaud makes a statutory error argument pursuant to Booker, claiming the district court improperly applied the sentencing guidelines as mandatory. We review this claim only for plain error. Rodriguez, 398 F.3d at 1298; Shelton, 400 F.3d at 1328-29. In this case, the district court's imposition of sentence pursuant to a pre-Booker mandatory application of the Sentencing Guidelines did not constitute plain error. Nothing in the record indicates that the district court would have imposed a sentence below the guidelines range if it had operated under an advisory guidelines system. To the contrary, the district court expressly stated that it considered the sentence imposed "completely appropriate."

Tureaud cannot meet his burden to establish that his sentencing under a mandatory guidelines scheme affected his substantial rights.

**AFFIRMED**.